**Application of Samuel SMITH and Allen J. Hubin.**

**Patent Appeal No. 8935.**

United States Court of Customs and Patent Appeals.

Aug. 2, 1973.

James A. Smith, St. Paul, Minn., Alexander, Sell, Steldt & DeLaHunt, St. Paul, Minn., attorneys of record, for appellants. Ellsworth H. Mosher, Arlington, Va., Stevens, Davis, Miller & Mosher, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals sustaining the § 112 rejection of claims 1, 6, 7, 13 and 51 of appellants' application Serial No. 527,399 filed February 10, 1966, as a continuation-in-part of application Serial No. 290,218 filed June 24, 1963. We reverse.

### The Invention

The claims are drawn to polymers which are cationically active at the ends. These polymers have the nonterminating characteristic of so-called "living" polymers. Appellants explain the concept in their brief as follows:

Polycationically active polymers, i. e., polymers, in which both ends of the polymer chain are cationically active, are "living polymers". That is, they behave as though they were non-terminated and, at each end of the chain, can continue to "grow" or initiate the polymerization of a cationically polymerizable monomer, such as tetrahydrofuran. Thus, for example, if tetrahydrofuran monomer is added to a polycationically active polymer, it will polymerize onto both ends thereof, producing a higher molecular weight polymer which is also cationally [sic] active at each end of the polymer chain and which therefor[e] is polycationically active.

Appellants note that whereas previously discovered "living" polymers have been anionic, the present polymers are cationic. They state that:

Among the more important uses of such polymers is in the preparation of block copolymers and of polymers having various terminating groups such as polymeric polyamines, polymeric polyisocyanates and polymeric polythiols. They are also valuable polymeric alkylating agents.

Claim 1 broadly defines the polymer as cationically active at at least two ends by virtue of defined radicals and as "free of alkylatable groups." The claim also identifies the "living," or polycationic, activity of the polymer in terms of the polymer's capacity to react in specified ways. Claim 1 reads as follows:

1. A polymer which is free of alkylatable groups and which is cationically active at at least two ends, each of which ends having associated therewith only a radical which:

(1) in anionic form is a non-terminating anion when 2 mol percent of a dissolved salt containing said anion is present during the polymerization of 99 mol percent tetrahydrofuran and 1 mol percent ethylene oxide with 2 mol percent of boron trifluoride as polymerization initiator at 20°C. to provide at least about 50 percent conversion of said monomers to polymer, and

(2) is an anion of a protonic acid stronger than 100% sulfuric acid, said poly-cationic activity being characterized by said polymer's ability (a) to react with at least a two-fold molar excess of ammonia at a temperature below about 25°C. to produce a polymeric polyprimary amine or polyamide

in which the amine or amide groups are in the terminal positions, and (b) to initiate the polymerization of tetrahydrofuran monomer at 25°C.

The other claims on appeal, dependent on claim 1, impose limitations not pertinent to the questions on this appeal.

Referring to the limitation in the claims to the effect that the polymeric moiety be "free of alkylatable groups," appellants state in their brief:

The absence of alkylatable groups in the polymeric moiety is desirable because the living polymers are themselves effective alkylating agents and thus would tend to interact with any alkylatable group on the polymeric moiety, destroying the desired "living" characteristics.

As will be seen, that limitation is at issue in this appeal. The specification does not expressly disclose that the final polymer be free of alkylatable groups in the polymeric moiety (as opposed to the end units), and claim 1 on appeal is not an original claim.[1]

The specification discloses several methods of making the polymers:

The substantially linearpoly-cationically active polymers of this invention can be prepared by two general methods. The first method involves direct conversion of monomer [acid polymerizable monomers such as tetrahydrofuran and sym-trioxane] to a di-cationically active polymer, using certain catalysts * * *. In a second method, preformed polymers in the 400 to 100,000 molecular weight range and having certain functional groupings are converted to poly-cationically active polymers, as hereinafter described.

The "second method" is characterized as an indirect conversion process which can produce "either linear, di-cationically active or branched poly-cationically active polymers, depending upon the state of branching and terminal group functionality of the preformed polymer."

The indirect method uses a polymer rather than a monomer as a starting material. The specification discloses the following:

Although the direct method of preparation of the di-cationically active polymers of this invention is extremely useful, it is generally limited to certain cationically polymerizable monomers, as explained previously. Considerable versatility is provided by an indirect method of preparing a terminally polycationically active polymer which utilizes as a starting material a preformed polymer (i. e. prepolymer) which has certain functional substituents only in terminal positions and which is otherwise free of alkylatable groupings (e. g. olefin, amine, hydroxyl, thiol, carboxylic acid, etc.). Appropriate prepolymers can be classified in two categories:

I. Polymers containing $-OH$ or $-SH$ (or the alkali metal salts thereof), $-COOH$ or $SO_3H$ terminal groups can be converted to terminally poly-cationically active polymers by reaction with either a non-terminating catalyst parent acid, or certain derivatives thereof as specified below, wherein the catalyst parent acid is capable of initiating the cationic polymerization of tetrahydrofuran per se.

\* \* \* \* \* \*

II. Polymers containing acyl (i. e. carbonyl or sulfonyl) halide terminal groups, preferably acyl chloride or acyl bromide end groups, may be converted to polymeric mixed anhydrides by reaction with a non-terminating acid (i. e. catalyst parent acid) capable of initiating the polymerization of tetrahydrofuran, or a salt thereof, preferably a silver salt thereof. Illustrative reactants for the preparation of terminally poly-cationically active polymers form the abovementioned prepolymers include $FSO_3Ag$,

1. We do not have before us original claim 1. See In re Gardner, 475 F.2d 1389, supplemental opinion, 480 F.2d 879 (CCPA 1973).

$CFSO_3SO_3H$, $CF_3SO_3Ag$, $HClO_4$ and $AgClO_4$.

In addition to detailing how to make the claimed polymers directly from certain monomers and indirectly starting with preformed polymers, the specification provides disclosure on how to make the performed polymers and on how to use the claimed polymers. Methods of taking advantage of the polymers' capacity as an alkylating agent are among the uses disclosed. The specification includes a number of examples which illustrate the methods of making and using particular embodiments of the invention.

### The Decision of the Board

The issues before us are best introduced by the following selected portions of the board's opinion:

Claims 1, * * * 6, 7, 13 and 51 stand rejected as failing to comply with the provisions of 35 U.S.C. 112 in that the expression "polymer which is free of alkylatable groups" is too broad and unwarranted by the disclosure. The examiner is of the view that the disclosure of the specification does not warrant claims of such scope.

* * * * * *

* * * according to appellants' specification and the representations made in their main brief on appeal, the "polymer which is free of alkylatable groups" may be prepared by (a) polymerizing acid polymerizable monomers or by (b) selecting preformed polymers with appropriate terminating groups and reacting the selected preformed polymers with compounds which provide the required terminal radicals.

With regard to (b), categories I and II as identified in * * * appellants' specification constitute the only disclosed areas from which appellants' selection is to be made. Categories I and II clearly do not encompass the entire field of polymers free of alkylatable groups; appellants do not appear so to contend, nor do they appear to contend that the two disclosed categories are even representative of the entire field. [Claim 1], however, encompasses the entire field.

Appellants do not urge that the disclosure concerning the monomers to be employed in alternative (a) is sufficient to support the broad claim terminology and we do not find that it does, either alone or together with the disclosure of categories I and II of alternative (b).

We conclude that the description of the invention contained in the specification does not provide sufficient information to disclose to one skilled in the art here involved the subject matter encompassed by the expression "polymer which is free of alkylatable groups" appearing in claims 1, 6, 7, 13 and 51. These claims therefore do not meet the requirements of 35 U.S.C. 112 in the sense that the disclosure of the specification is inadequate to support the subject matter claimed. We will sustain the rejection of claims 1, 6, 7, 13 and 51 grounded on this section of the statute.

The board adhered to its decision on reconsideration. The board rejected appellants' argument that the invention as claimed has support of equal breadth in the specification as filed.

### OPINION

The solicitor contends that the language of the board's opinion plainly suggests a first paragraph, § 112, "description" requirement rejection. It is asserted that the board was correct in finding the specification not to describe or disclose the invention as broadly as claimed. In the solicitor's view, the specification does not teach cationically active polymers having the nonterminating characteristic with the only limitation on the polymeric moiety being the requirement that it be free of alkylatable groups. The solicitor also argues that this gives rise to a failure to satisfy the "how-to-use" requirement of § 112, first paragraph.

The board's opinion does not precisely set forth which of the several specific

disclosure requirements of the first paragraph of § 112 is deemed not to be satisfied. We think that in its essence, the rejection is founded on the conclusion that the specification does not describe the invention as broadly as it is claimed. There is little language which is evocative of a position that the specification does not enable one skilled in the art to *use* the invention as broadly as it is claimed. However, we will deal with both the principal rejection based on the failure to satisfy the description requirement as well as a possible rejection based on the failure to satisfy the how-to-use requirement. We think it is clear that there has been no challenge to the specification disclosure with respect to either the manner of making the claimed invention or the best mode contemplated, and the solicitor does not contend otherwise.

### The "Description" Requirement

■ This court has repeatedly recognized a separate description requirement in the first paragraph of § 112. See In re Smith, 458 F.2d 1389, 1394, 59 CCPA ——, —— (1972) and cases there cited. Acknowledgment of that requirement evidences appreciation of an important purpose of § 112, first paragraph, which is the definition of the attributes which a patent specification must possess as of the filing date to be entitled to that filing date as a prima facie date of invention. Satisfaction of the description requirement insures that subject matter presented in the form of a claim subsequent to the filing date of the application was sufficiently disclosed at the time of filing so that the prima facie date of invention can fairly be held to be the filing date of the application. This concept applies whether the case factually arises out of an assertion of entitlement to the filing date of a previously filed application under § 120, as was involved, e. g., in In re Smith, supra, and In re Ahlbrecht, 435 F.2d 908, 58 CCPA 848 (1971), or arises in the interference context wherein the issue is support for a count in the specification of one or more of the parties, e. g., as was the situation in Fields v. Conover, 443 F.2d 1386, 58 CCPA 1366 (1971), and Snitzer v. Etzel, 465 F.2d 899, 59 CCPA —— (1972), or arises in an ex parte case involving a single application, but where the claim at issue was filed subsequent to the filing of the application, e. g. as in In re Ruschig, 379 F.2d 990, 54 CCPA 1551 (1967) and In re Welstead, 463 F.2d 1110, 59 CCPA —— (1972) (which involved a new matter rejection under § 132, but which was resolved on the authority of description requirement cases). Where the claim is an original claim, the underlying concept of insuring disclosure as of the filing date is satisfied, and the description requirement has likewise been held to be satisfied. See In re Gardner, note 1, supra; In re DiLeone, 436 F.2d 1404, 58 CCPA 925 (1971).

■ Compliance with the first paragraph of § 112 is adjudged from the perspective of the person skilled in the relevant art. This court has held that claimed subject matter need not be described *in haec verba* in the specification in order for that specification to satisfy the description requirement, In re Smith, supra; In re Lukach, 442 F.2d 967, 58 CCPA 1233 (1971), although where there is exact correspondence between the claim language and original specification disclosure, the description requirement would normally be satisfied. See Snitzer v. Etzel, supra; In re Robins, 429 F.2d 452, 57 CCPA 1321 (1970). The specification as originally filed must convey clearly to those skilled in the art the information that the applicant has invented the specific subject matter later claimed. In re Ruschig, supra, 379 F.2d at 996, 54 CCPA at 1559. When the original specification accomplishes that, regardless of *how* it accomplishes it, the essential goal of the description requirement is realized. See, e. g., In re Smythe, Cust. & Pat.App., 480 F.2d 1376, decided June 28, 1973.

■ Viewing the description-requirement rejection before us in light of these considerations, we conclude that

the board erred in sustaining the rejection. We think the specification does clearly convey to those skilled in the art the information that appellants invented cationically-active "living" polymers as broadly claimed.

The specification admittedly does not contain language which corresponds identically to the language of the claims on appeal. However, the thrust of the disclosure is that appellants "have provided substantially linear poly-cationically active polymers" which exhibit the "living" character and have defined terminal groups to insure the reactivity characteristics set forth in claim 1. We do not think that one skilled in the art would, after reading the specification, assume that the invention was limited to only certain particular polycationically active polymers. The tenor of the specification is that a generic invention has been made.

The limitation that the polymeric moiety be free of alkylatable groups has support in the specification. The preformed polymers used in the indirect method of preparation are stated to be free of such groups in other than the terminal portions, and it appears that the conversion reaction effects a change in the terminal portions rather than the recurring units of the polymeric moiety. The specification discloses the alkylating ability of the polymers. We think one skilled in the art would immediately have recognized that the absence of alkylatable groups in the preformed polymers must be carried over to the final polymers in order for the nonterminating quality to be retained.

The solicitor finds support for the board's position in the following passage of the specification, emphasis the solicitor's:

> From the foregoing description, it is evident that a *great number* of preformed polymers containing suitable terminal functional groups can be used to prepare the cationically active polymers of this invention, including such *suitable* preformed polymers as polymeric materials based on styrene, vinyl chloride, vinyl alkyl ethers, esters of acrylic and methacrylic acid, vinyl esters, and polymers such as polyesters, polyethers, etc.

The solicitor reads "a great number" and "suitable" preformed polymers as indicating that not *all* preformed polymers were contemplated. We are unable to find the support in that passage that the solicitor finds since there is no assertion by appellants that *all* preformed polymers are suitable nor do the claims encompass *all* preformed polymers. Only prepolymers "free of alkylatable groups" in the polymeric moiety can be used to make the claimed polymers by the indirect method, and the claims are limited to polycationically active polymers which are free of alkylatable groups in the polymeric moiety.

The specification as a whole conveys possession of the claimed invention as of the filing date. The description requirement of the first paragraph of § 112 is accordingly satisfied.

### The How-to-Use Requirement

The solicitor contends that to the extent that the effective scope of the claims exceeds that of the specification disclosure, the claims are based on a specification which fails to sufficiently disclose the manner of using the invention as broadly claimed. The solicitor envisions "diverse polymeric moieties encompassed by the claims but not by the disclosure * * *." However, we have determined that the scope of the claims is commensurate with the description of the invention provided in the specification.

If there were reasonable basis to doubt that significant classes of polymers encompassed by the claims could not be used in the manner disclosed in the specification, a rejection based on the failure of the specification to enable one skilled in the art to use the invention as broadly claimed might well lie. See In re Marzocchi, 439 F.2d 220, 58 CCPA 1069 (1971); In re Fouche, 439

F.2d 1237, 58 CCPA 1086 (1971). However, we do not find that either the examiner or board in any way articulated any reason for doubting that all polymers falling within the scope of the claims can be used in the same manner as those specifically disclosed in the specification.

Finding no basis upon which to question the use of all polymers within the claimed genus, and having determined that the scope of the genus is commensurate with the specification disclosure, we conclude that the how-to-use requirement is satisfied.

On the record here present, the board erred in holding the requirements of the first paragraph of § 112 not to be satisfied by the specification as applied to the claims on appeal. The decision of the board is accordingly reversed.

Reversed.