**SYNTHETIC INDUSTRIES (TEXAS), INC. and Solomon Goldfein, Plaintiffs,**

v.

**FORTA FIBRE INC. and Leonard H. Shockley, d/b/a Leonard H. Shockley & Associates, Defendants.**

**No. Civ. A. 83–554.**

United States District Court, W.D. Pennsylvania.

Aug. 3, 1984.
As Amended Oct. 1, 1984.

Jones & Askew, Atlanta, Ga., Carl A. Eck, Thomas J. Sweeney, Pittsburgh, Pa., for plaintiffs.

Robert D. Yeager, Pittsburgh, Pa., for defendants.

## OPINION

COHILL, District Judge.

### I. *Procedural History*

This is an action involving questions of the validity, infringement and enforceability of two patents, one of which is owned or controlled by each party in this case. The action was commenced by the plaintiffs, Synthetic Industries (Texas), Inc. ("Synthetic") and Solomon Goldfein, in the United States District Court for the Northern District of Georgia. By stipulation of the parties, it was transferred to this Court.

The complaint filed by the plaintiffs contains two counts: (i) a declaratory judgment action against the defendant, Forta Fibre, Inc. ("Forta Fibre"), in which the plaintiffs seek to have U.S. Patent No. 3,591,395 (hereinafter "the Zonsveld Patent") which is owned by Forta Fibre declared invalid; and (ii) an action against Forta Fibre for infringement of U.S. Patent No. 3,645,961, under which Synthetic is exclusively licensed from Mr. Goldfein.

Following the transfer of the case to this Court, Forta Fibre counterclaimed against Synthetic and Iner-Mesh, Inc. for infringement of the Zonsveld Patent.

Synthetic filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 as to its first claim in its complaint and as to Forta Fibre's counterclaim, in which it contends that the Zonsveld Patent is invalid. It is this motion which we now consider.

The parties stipulated that an evidentiary hearing be held on the issues raised by the summary judgment motion and that we could treat that hearing as a separate trial on those issues pursuant to Fed.R.Civ.P. 42(b).

An evidentiary hearing was held on April 16, 1984, and since we are treating that proceeding as a separate non-jury trial, we make the following Findings of Fact and Conclusions of Law in accordance with Fed. R.Civ.P. 52(a).

### II. *Findings of Fact*

#### A. *The Zonsveld Patent*

The Zonsveld Patent, given the intriguing title of "Hydraulic Cementitious Compositions Reinforced with Fibrillated Plastic Film," was issued to Shell Oil Company U.S.A. on July 6, 1971. It names Johannes J. Zonsveld and Ronald Francis Salmons as inventors. Messrs. Zonsveld and Salmons are former employees of Shell International Chemical Company ("SICC") which is located in London. Once the patent was obtained, Shell Oil Company U.S.A. assigned it to Forta Fibre.

The invention described and claimed in the Zonsveld Patent relates to the reinforcement of a water-hardenable cementitious mass, such as concrete, with relatively short lengths of plastic fibrous material. The fibrous material used is not an ordinary monofilament form, but rather, it is in a special form called "fibrillated film." *See* Defendant's Ex. 3. Fibrillated film is formed by first stretching a thin sheet of plastic, such as polypropylene, and then subjecting the stretched film to a mechanical process which splits the film longitudinally. *See* Defendant's Ex. 1. The result is an interconnected network of "fibrils" resembling a hairnet.

Zonsveld created this invention while employed at SICC, the idea coming to him after he read an article written by Solomon Goldfein that described the use of monofilament polypropylene fibers as reinforcement in cementitious masses. Zonsveld believed that fibrillated polypropylene film would be a much stronger reinforcer than the monofilament material. Though the fibrillated film proved to be no better at reinforcing concrete than the monofilament fibers, Zonsveld did discover that, when mixed in concrete, the fibrillated polypropylene did not ball-up as did the monofilament material. Instead, the fibrillated fibers,

when mixed with concrete, opened up as networks and were evenly distributed throughout the substance.

Zonsveld's discovery of this new method of preparing a reinforced concrete mass by adding fibrillated film led him to file the first patent application, U.S. Serial No. 660,186 (hereinafter "the first Zonsveld application"), on August 14, 1967. *See* Plaintiffs' Ex. 7.

Before filing the first Zonsveld application, he conducted numerous experiments with the fibrillated polypropylene film and discovered that there was a maximum amount of fibrous material that could be added to a concrete mix without experiencing difficulty in handling the mix. This maximum amount was determined to be about 2% by weight. As for the lowest amount of fibrous material that could be added, Zonsveld determined that the lower limit was any amount sufficient to be effective as reinforcement in the concrete.

The amounts of fibrous material and the effect of those amounts are set forth in claim 1 of the first Zonsveld application which states,

The method of preparing a reinforced hydraulic cementitious mass which comprises admixing with an uncured water-hardenable cementitious mass, prior to molding into the desired shape, *a predetermined, processable amount, up to 2% by weight,* of fibrous reinforcing elements formed from a stretched and then fibrillated plastics [sic] film.

(Emphasis supplied.) Defendants' Ex. 4, p. 13.

The accompanying specification in the first Zonsveld application explains the reason for the maximum amount of fibrillated film to be added.

*The amount* of chopped fibrillated film which can be added *is limited by its effect on processability.* Other factors, such as the water: cement ratio also affect processability and hence the amount of chopped film that can be added. Excessive amounts of chopped film

lead to formation of non-intermixable lumps of the fibrillated film. *Amounts in the range of 0.5 to about 0.8% can generally be added* without difficulty *and amounts up to 2% may be employed in some compositions.*

(Emphasis supplied.) *Id.* at p. 4.

### B. *The Prosecution History of the Zonsveld Applications*

The prosecution of the first Zonsveld application before the United States Patent and Trademark Office ("PTO") was done by Martin S. Baer, Esq., a patent lawyer employed by Shell Development Company, a division of Shell Oil.

The claims of the first Zonsveld application were initially rejected by the PTO under 35 U.S.C. § 112, ¶ 2 [1], the PTO examiner stating that the claims were unduly broad since there was no statement of a lower limit of fibrous material, but merely the phrase "up to 2%." *See* Plaintiffs' Ex. 7.

Mr. Baer chose not to contest the PTO's rejection, and instead, on his own initiative and without consulting Mr. Zonsveld or anyone from SICC, he amended the claims of the first Zonsveld application to read "from about 0.5 to 2% by weight." Plaintiffs' Ex. 7. Thereafter, the PTO informed Mr. Baer that the amended claims were allowable and that the prosecution on the merits of the first Zonsveld application was closed. *Id.*

Mr. Baer informed the patent department at Shell Internationale Research Maatschappij B.V. ("SIRM") in the Hague, Netherlands, which was the go-between between Mr. Baer and Mr. Zonsveld, of the favorable action by the PTO. SIRM relayed this information to Mr. Zonsveld and SICC who responded that the lower figure of 0.5% in the claims excluded attractive commercial embodiments of the Zonsveld invention. SIRM, therefore, contacted Mr. Baer and asked him to correct the lower limit.

---

1. 35 U.S.C. § 112, ¶ 2 provides:
    The specification shall conclude with one or more claims particularly pointing out and dis-

tinctly claiming the subject matter which the applicant regards as his invention.

Since the PTO had accepted the first Zonsveld application with the amendments and had issued a Notice of Allowance, Plaintiffs' Ex. 7, further amendment of the application was foreclosed. *See* 37 C.F.R. § 1.312(a). Mr. Baer, therefore, had to file a new patent application. Since SIRM requested that new subject matter (in addition to the change in the lower limit) be added to the application, the new application (hereinafter referred to as "the second Zonsveld application") was denominated as a continuation-in-part application.[2]

The second Zonsveld application, U.S. Serial No. 49,531, was filed on June 24, 1970 and preserved the original broad disclosure of the first Zonsveld application with respect to the amount of fibrous material that could be added, i.e. "up to 2% by weight." Plaintiffs' Ex. 8, p. 8. It stated a preferred range of "0.05 to 0.5% by weight," *Id.*, and the claims had a narrowed range of fibrous reinforcing material of "from about 0.05 to 2% by weight." *Id.* at p. 21. Mr. Zonsveld testified that he did not consider 0.05% to be the absolute minimum number but merely a safe limit chosen by the patent attorneys which would cover the economically attractive applications of his invention, and also appease the PTO.

Claim 1 of the second Zonsveld application thus reads,

> The method for preparing a reinforced hydraulic cementitious mass which comprises admixing with a wet uncured water hardenable cementitious mass, prior to molding to the desired shape, *a predetermined processable amount from about 0.05 to 2% by weight,* of fibrous reinforcing elements...

(Emphasis supplied.) Plaintiffs' Ex. 8, p. 8. The claims of the second Zonsveld application were allowed by the PTO and a Patent was issued from the second application on

July 6, 1971. Claim 1 of the Zonsveld Patent reads identically with claim 1 of the second application. *See* Defendants' Ex. 1.

### C. The Dispute

The first Zonsveld application was filed on August 14, 1967. Almost three years later on June 24, 1970 the second Zonsveld application was filed from which the Zonsveld Patent was issued.

More than one year before the filing date of the second Zonsveld application, but after the filing date of the first Zonsveld application, Shell Chemicals published a brochure entitled " 'Caricrete' Polypropylene Fibers in Concrete" which describes the Zonsveld Patent.

It is the plaintiffs' contention that this brochure is prior art to the second Zonsveld application, therefore, the Zonsveld Patent which was issued from the second Zonsveld application is invalid. *See* 35 U.S.C. § 102.[3]

The defendant argues that the second Zonsveld application is entitled to the benefit of the filing date of the first Zonsveld application since the invention claimed in the Zonsveld Patent is disclosed in the first application in the manner required by law. Thus, if the second application were given the filing date of the first application, the Caricrete brochure would have been subsequently published and would not be prior art.

The parties have stipulated that if it is determined that the second Zonsveld application is not entitled to the filing date of the first, the Caricrete brochure would be prior art and would render the Zonsveld Patent invalid.

### III. Conclusions of Law

#### A. Jurisdiction

We have diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, and

---

**2.** "A continuation-in-part is an application filed during the lifetime of an earlier application by the same applicant, repeating some *substantial* portion or all of the earlier application and *adding matter not disclosed* in said earlier case." (Emphasis in original). MPEP § 201.08.

**3.** 35 U.S.C. § 102 provides in pertinent part,

A person shall be entitled to a patent unless—

. . . . .

(b) the invention was... described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for said patent in the United States ...

original jurisdiction pursuant to 28 U.S.C. § 1338(a).

## B. *Filing Date of Second Zonsveld Application*

In determining whether the second Zonsveld application is entitled to the filing date of the first application, we must first look to the standard enunciated in the Patent Act, 35 U.S.C. § 120, which provides in pertinent part,

> An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application.

Thus, by its terms, 35 U.S.C. § 120 requires a comparison between the "invention" claimed in the later-filed application, and the disclosure made in the earlier-filed application. Specifically, we must decide whether the invention claimed in the second Zonsveld application (and subsequent Patent) is adequately described in the first Zonsveld application. To determine what is required for an adequate description, we must turn to 35 U.S.C. § 112 which provides in relevant part,

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same ...

Courts have enunciated guidelines for the application of the description requirement of section 112. In *In re Wertheim*, 541 F.2d 257 (CCPA 1976), the court held,

> The function of the description requirement is to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him; how the specification accomplishes this is not material. [Citation omitted.] It is not necessary that the application describe the claim limitation exactly, [citation omitted], but only so clearly that persons of ordinary skill in the art will recognize from the disclosure that appellants invented processes including those limitations. [Citation omitted.]

*Id.* at 262. *See also In re Herschler*, 591 F.2d 693 (CCPA 1979); *In re Blaser*, 556 F.2d 534 (CCPA 1977); *In re Smith*, 481 F.2d 910 (CCPA 1973); *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F.Supp. 1298 (D.Del.1981).

In *Rohm & Haas Co., supra*, the court explained the reason for the § 112 description requirements in cases, such as this, where there are two patent applications.

> Satisfaction of the description requirement insures that claims presented subsequent to the original application, as part of an alleged 'continuation,' are actually within the subject matter disclosed by the original application and thus fairly entitled to this earlier filing date.

*Id.* at 1306.

Courts have consistently held that, when deciding whether a patent description satisfies the § 112 requirements, a court should not use "[b]roadly articulated rules." *In re Wertheim, supra*, at 263. *See e.g., In re Smith, supra*. As the *Wertheim* court so clearly articulated,

> [m]ere comparison of ranges is not enough, nor are mechanical rules a substitute for an analysis of each case on its own facts to determine whether an application conveys to those skilled in the art the information that the applicant invented the subject matter of the claims. In other words, we must decide whether the invention appellants seek to protect by their claims is part of the invention that appellants have described *as theirs* in the specification.

(Emphasis in original.) *Wertheim, supra*, at 263.

■ There are three separate and distinct requirements which must be met in accordance with § 112 before a court can find that an application adequately describes the invention. These requirements are, 1) the application must contain a written description of the invention, 2) it must

adequately explain the enablement as to the manner and process of making and using the invention, and 3) it must describe the best mode for making the invention. *Triax Co. v. TRW, Inc.*, 217 U.S.P.Q. 336, 341 (N.D.Ohio 1982).

In the case at bar, the plaintiff argues that the Zonsveld Patent was not adequately described in the first Zonsveld application (as amended) since the application stated that "up to 2% by weight" and "from about *0.5* to 2% by weight" of the fibrous material could be added to the concrete mix, whereas the second application and the patent state that "about *0.05* to 2% by weight" was the range. In other words, the plaintiffs contend that the first Zonsveld application does not meet the first requirement of § 112, i.e., the inclusion of a written description of the invention. The defendant agrees that the actual lower limit of 0.05% does not appear anywhere in the first application, however, it contends that this omission is not fatal to the patent since persons with ordinary skill in the art of concrete would have been able to determine the lower limit through routine trials, and that the second patent *does* preserve the first application's statement that "up to 2% by weight" is acceptable.

■ Courts have held that the absence of an exact, written description in an application is not, *by itself,* fatal to the patentability of an invention. *Speed Shore Corp. v. Denda,* 605 F.2d 469, 473 (9th Cir.1979). *See also In re Lukach,* 442 F.2d 967 (CCPA 1971). But, when the precise words do not appear in the first application, the application must be analyzed as to what it means to a person skilled in the art and whether that person could make and use the invention after reading the application. *Flynn v. Eardley,* 479 F.2d 1393 (CCPA 1973). *See also In re Smith,* 481 F.2d 910 (CCPA 1973). When determining whether a person skilled in the art understands the implication of an application, we must look to the state of the art as it existed when the application was filed. *Cosden Oil & Chemical Co. v. American Hoescht Corp.,* 543 F.Supp. 522 (D.Del.1982).

In the instant case, two persons skilled in the art of concrete testified as to what the Zonsveld applications and subsequent patent meant in the late 1960's and early 1970's; Dr. James P. Romauldi testified for the plaintiff, and Mr. Arthur J. Livingood was called by the defendant.

Dr. Romauldi, who has a Ph.D in civil engineering, is on the engineering faculty at Carnegie Mellon University and works privately as a consulting engineer. He has worked in the field of fibrous reinforced concrete since the late 1950's and has obtained some patents in the area of fibrous composites.

Dr. Romauldi testified on direct examination that the teaching of the first Zonsveld application is that only .5 to 2% of fibrous material could be added to the concrete mix, whereas, the second application provided for a lower limit of 0.05%. On cross examination, Dr. Romauldi stated that a person skilled in the art of fibrous reinforced concrete in the year 1967 would know from the first Zonsveld application that polypropylene film solves the problem of balling up which is caused by monofilament fibers. *See* Tr., p. 122. He went on to state that the first application teaches that when fibrillated polypropylene fibers are admixed with the concrete in a *predetermined, processable* amount, *less than 2%,* the reinforcing elements will be uniformly distributed throughout the cementitious mass. *See* Tr., p. 123. To find a processable, predetermined amount, the ordinary person skilled in the art would have to run tests. *See* Tr. pp. 130–131. Such tests are common in the field. *Id.* at p. 126.

■ We are of the opinion that it was brought out on cross examination that the first Zonsveld application, particularly claim 1, described the Zonsveld Patent in sufficient written terms to enable a person skilled in the art to practice it.

Q. Now, Dr. Romauldi, when the person of ordinary skill reads claim one, is he not told that he must add some amount of fibrous reinforcing elements?

A. That would be implied in claim one.

Q. And that some amount is a predetermined amount; is it not?

A. That is correct; that is what it says, a predetermined amount.

Q. All right. And that some amount cannot exceed two percent in order to come within the teachings of this claim; is that correct?

A. Now, if you are talking only about claim one, claim one says it should not be over two percent.

Q. So a person of ordinary skill in the art, having first predetermined the amount of fibrous reinforcing elements, and assuming that that amount is less than two percent—

A. Right.

Q. —when he admixes that amount with the water-hardenable cementitious mass, he then is practicing the method described in this first Zonsveld application; is he not?

A. .... If you ask me if he takes any amount less than two percent, then he determines by any method that it is processable, does it fit claim one, yes, it fits claim one. That is a different question than you asked me, does it follow the teachings of this application.

Tr. pp. 135–136. Dr. Romauldi contended that the first *claim* in the first application teaches that up to 2% of fiber may be added, but the first *application* itself teaches that .5 to 2% may be added. *See* Tr. p. 136. He, however, deviated from this position when asked,

Q. I was assuming in my question that the words that appear in claim are part of the teachings [of the application], and I am sorry that—

A. *They are part of the teachings.* I understand that to be the case.

(Emphasis supplied.) Tr. p. 136.

Mr. Livingood testified for the defendant, not as an expert, but as an ordinary person skilled in the art of concrete in 1967. *See* Tr. p. 158. He acquired his skill while working at Dravo Corporation for thirty-three years in various positions such as materials inspector, manager of technical services, and a consulting worker. These positions afforded him the opportunity to test hundreds of concrete mix designs.

Mr. Livingood testified that he understood the invention described in the first Zonsveld application to be that, by mixing a "predetermined or prescribed" amount of fibrillated polypropylene film with concrete, it would "intertwine or interlock with the particles [of concrete.]" Tr. p. 160. He stated that, in accordance with the first Zonsveld application, the maximum amount of fiber which could be added to concrete is "up to two percent." Tr. p. 160. When asked what he understood the smallest amount of fibrillated material that may be added, he responded,

Well, unless it was given to me, I would only be able to determine that by trial.

. . . . .

... it is limited by its effect on the processability and, of course, the mix and the proportions of that mix...

Tr. pp. 160–161. Mr. Livingood stated that there is nothing unusual about conducting these trials. *See* Tr. p. 162.

Synthetic argues that the testimony of Dr. Romauldi and Mr. Livingood proves that the description of the invention in the first Zonsveld application was not specific enough since both men believed experiments or trials would have to be conducted to determine the lower limit of fibrous film that can be added to the concrete mix. The court in *Hirschfeld v. Banner*, 462 F.Supp. 135 (D.C.1978), *aff'd* 615 F.2d 1368 (D.C. Cir.1979), *cert. denied sub. nom., Diamond v. Hirschfeld*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1979), was faced with a similar argument, and concluded that

[t]he first paragraph of 35 U.S.C. § 112 requires that the specification be complete enough to enable one of ordinary skill in the art to make and use the invention without *undue* experimentation.... The prohibition of "undue" experimentation means that the need for a *minimum amount of experimentation is not fatal.*

*Id.* at 142. In applying this precept to the case at hand, we find that the trials discussed by Dr. Romauldi and Mr. Livingood were not "undue" experimentation, but

were simple tests that people skilled in the art normally perform when preparing concrete mixes. The Zonsveld applications and subsequent Patent encompassed an invention whereby a "predetermined" amount of fibrillated film could be added to a concrete mix and it would be uniformly distributed. One trained in the area would be able to make and use the invention merely by conducting "minimum" experimentation, i.e. increasing or decreasing the amount of fibrous material. We do not believe this is fatal to the patent.

In reviewing all of the testimony, the applications and the patent, we conclude that an ordinary person skilled in the art in 1967 would have been able to read the first Zonsveld application and know that an amount of up to 2% of fibrillated film can be mixed with concrete and not ball-up. This same conclusion would be reached by that same person after he read the second Zonsveld application and the Zonsveld patent. It is true that the lower limit was changed from .5% to 0.05%, however, the second application itself stated that 0.05 to 2% is merely a preferred range and that the actual amount which may be added to successfully make the invention is a "predetermined, processable amount." Thus, this range of 0.05 to 2% merely quantifies a preferred amount. It does not change or affect the basic *purpose* of the Zonsveld invention. *See e.g. In re Voss,* 557 F.2d 812 (CCPA 1977).

The plaintiff relies heavily on *In re Blaser,* 556 F.2d 534 (CCPA 1977) to support its argument that the change in the lower limit is fatal to the patent. In *Blaser,* the first application stated that "up to 1.6 mols" of water could be added to the mixture to achieve the desired effect. In the second application, the range was changed to "0.6 mols to 1.6 mols." *Id.* at 538. The court held that the second application was not entitled to the filing date of the first because the description of the invention was changed. The court stated that a person skilled in the art could run a series of experiments to discover the lower limit, but enablement was not the issue. What was flawed, the court concluded, was the description.

We agree that the *Blaser* case is closely analagous to the case at bar. However, there is one major difference. In *Blaser,* the second application stated that if less than 0.6 mols of water were added, the invention would be "unusable in practice." *Id.* Thus, the first application was clearly incorrect in claiming a range of "up to 1.6 mols," resulting in a dramatic difference in the second application. In the instant case, the Zonsveld invention will work with 0.5% or 0.05% of fibrous material. The invention is not rendered useless if a person follows the instructions of the first application instead of the second. In either case, the purpose of the invention (the even distribution of fibers) is achieved.

The court in *In re Smith,* 481 F.2d 910 (CCPA 1973), accurately summarized the reason for 35 U.S.C. § 112 and its effect.

> The specification as originally filed must convey clearly to those skilled in the art information that the applicant has invented the subject matter later claimed. [Citation omitted] When the original specification accomplishes that, regardless of *how* it accomplishes it, the essential goal of the description requirement is realized.

(Emphasis in original.) *Id.* at 914. We believe that the first Zonsveld application clearly conveys to those skilled in the art that Mr. Zonsveld invented the process of adding fibrillated polypropylene film to concrete mix. Thus, the written description is sufficient and the "essential goal" of 35 U.S.C. § 112 has been met. We, therefore, conclude that the second Zonsveld application is entitled to the filing date of the first Zonsveld application. Thus, the Court holds on the merits that the "Caricrete" brochure is not prior art against the Zonsveld Patent; therefore, the Zonsveld Patent is not invalid in view of the "Caricrete" brochure.