**In re Richard F. WRIGHT.**

No. 88–1521.

United States Court of Appeals, Federal Circuit.

Jan. 24, 1989.

Mark P. Levy, Smith & Schmacke, Dayton, Ohio, argued, for appellant. With him on the brief was Richard H. Sayler.

Harris A. Pitlick, Office of the Sol., Arlington, Va., argued, for appellee. With him on the brief were Fred E. McKelvey, Sol. and Charles A. Wendel, Associate Sol.

Before FRIEDMAN and RICH, Circuit Judges, and BENNETT, Senior Circuit Judge.

RICH, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board) affirming the examiner's rejection of claims 1–20, all the claims of application serial No. 770,538, filed August 28, 1985 for "Method for Forming Images Using Free Flowing Photosensitive Microcapsules." We reverse.

All claims have been treated by both the PTO and appellant Wright as a group and stand rejected on two distinct grounds: (1) obviousness under 35 U.S.C. § 103 in view of the disclosures of U.S. patents to Macaulay, No. 3,016,308, and Sanders, No. 4,440,846, the latter being assigned to the Mead Corporation, Dayton, Ohio, assignee of Wright's application at bar, the real party in interest; and (2) a rejection based on 35 U.S.C. § 112 and predicated on the addition to all three independent claims as originally filed of an identical limitation, in order to distinguish the invention from prior art. The PTO contends the limitation is not supported by the specification. This limitation is shown in italics in illustrative claim 1 reproduced below.

There are three independent claims, 1, 6, and 13, the rest of the 20 claims being variously dependent. The rejections do not necessitate any separate consideration. Claim 1 in its present form reads (emphasis ours):

1. A method for forming images which comprises:

depositing a uniform layer of photosensitive microcapsules on the surface of a support, said microcapsules being in the form of a free-flowing powder *which is distributed upon said support but not permanently fixed thereto, said microcapsules* comprising a discrete capsule wall containing a photosensitive composition and said microcapsules having associated therewith an image-forming agent,

image-wise exposing said layer of photosensitive microcapsules to actinic radiation,

subjecting said layer of microcapsules to a uniform rupturing force such that said microcapsules rupture and image-wise release said internal phase, and

removing microcapsules from said support.

In the application as filed, claim 1 was exactly the same except that the word "and" took the place of the emphasized clause, which was added later. The examiner's § 112 rejection was explained by him in his Answer on appeal to the board as follows:

It is the position of the examiner that new limitation to microcapsule having term "not permanently fixed" is not supported in the disclosure and therefore is a new matter. The words "not permanently fixed" do not appear in the specification as originally filed and it is questionable whether appellant's specification, unequivocally teaches the absence of permanently fixed microcapsules.

This is the rejection under § 112 which the board sustained but in doing so it added its own thinking in a somewhat different vein:

We shall sustain this rejection. We agree with appellant that the invention claimed does not have to be described in *ipsis verbis* in order to satisfy the description requirement of § 112. [case omitted] Nonetheless, the question remains as to whether the meaning of "not permanently fixed thereto" is sufficiently described in the specification to inform the public what said language is intended to encompass. From our review of the present disclosure, we are convinced that this limitation is subject to different interpretations and the specification is devoid of adequate guidelines to direct the public to the correct meaning. In this connection, it will be noted that the disputed terminology is not limited to a *temporary* positioning of the microcapsules on the support, but would include a relatively protracted, but "not permanent", bonding of the microcapsules to the support.

Despite the self-evident differences between what the examiner said and what the board said, the board did not suggest that it was making a new rejection under 37 CFR 1.196(b).

Although the examiner did not mention "the description requirement of § 112," the board apparently took that to be the true basis of the examiner's rejection, notwithstanding the fact that its own reasoning partakes more of the notion that "not permanently fixed" is either vague and indefinite or of indeterminate breadth. But these were not stated to be grounds of rejection.

The brief for the Solicitor of the PTO, in the three pages devoted to the § 112 rejection, repeats what the board said and attempts to clarify it by saying:

[T]he inquiry is whether [an] artisan is made aware from the description in appellant's specification that he regarded as part of his invention—and so described in the specification—the concept that the microcapsules are "not permanently fixed."

And again:

The present case does not involve a breadth-description matter; the present case involves a definition-description matter, i.e., whether the specification describes the invention in a way to justify the manner in which it is now claimed.

### The Section 112 Rejection

When the scope of a claim has been changed by amendment in such a way as to justify an assertion that it is directed to a *different invention* than was the original claim, it is proper to inquire whether the newly claimed subject matter was *described* in the patent application when filed as the invention of the applicant. That is the essence of the so-called "description requirement" of § 112, first paragraph, which opens with the words: "The specification shall contain a written description of the invention...." The invention is, necessarily, the subject matter defined in the claim under consideration. The question arises in a variety of situations some of which are catalogued in *In re Smith*, 481 F.2d 910, 914, 178 USPQ 620, 624 (CCPA 1973). As our predecessor court said in that case:

The specification as originally filed must convey clearly to those skilled in the art the information that the applicant has invented the specific subject matter later claimed. *In re Ruschig*, supra, 54 CCPA [1551] at 1559, 379 F.2d [990] at 996, 154 USPQ [118] at 123. When the original specification accomplishes that, regardless of *how* it accomplishes it, the essential goal of the description requirement is realized.

In deciding the issue, the specification as a whole must be considered.

As also pointed out in *Smith* and as admitted by the board, "the claimed subject matter need not be described in haec verba in the specification in order for that specification to satisfy the description requirement." The fact, therefore, that the exact words here in question, "not permanently fixed", are not in the specification is not important. From the wording of the examiner's rejection it would seem that he did not know that; at least he wanted to be shown an "unequivocal teaching" that the microcapsules are not permanently fixed. The board, on the other hand, launched into a discussion of whether the *meaning* of the words is clear and whether the specification contains "guidelines" as to what they mean. It felt the words were open to "different interpretation", which goes to the *scope* of the phrase rather than support for it. We deem this to be an irrelevant inquiry. These are common, garden variety words known to every English-speaking person. The Associate Solicitor who argued this appeal (who was not the author of the brief) said he had no difficulty understanding their meaning, nor do we.

We have read the specification, in the light of which all that the claims say must be construed, and we have considered it against the background of the prior art partially shown by the references relied on. We are fully convinced that the process of the claims, containing the words "not permanently fixed", is described in the specification.

The method disclosed in both words and drawings comprises four manipulative steps: 1. microcapsules in the form of a free-flowing powder are *deposited* on a support; 2. the layer of powder is *exposed* to actinic radiation; 3. the powder layer is subjected to a *rupturing* force; 4. the capsules are *removed* from the support. When rupturing takes place it is done against a "web" such as a sheet of paper to which the image is transferred and the specification's examples warn that until the image is formed, by the rupture, it is important that the microcapsules not be dis-turbed so as to change their position, showing that they are not permanently fixed on their support at that time. The 4th or last step in the method is removing the microcapsules from the support on which they were deposited as a free-flowing powder, the removal being by "wiping, brushing, and/or using vacuum means." In one embodiment of the invention, the support is an electrically charged drum such as is used in xerographic office copiers, the powder being "cascade coated" onto the drum. The specification says that in such case the removal step can be accomplished simply by discharging the drum surface. The drawing for that embodiment shows a "cleaner means 40" which removes powder from the drum following the rupturing step, removing both "the ruptured and unruptured microcapsules."

All of this convinces us that it is of the essence of the original disclosure that the microcapsules are "not permanently fixed" to their various supports. The examiner was therefore wrong in his underlying premise that the limitation added to the claim by amendment contained "new matter." The specification does unequivocally teach the absence of permanently fixed microcapsules. The § 112 rejection was clearly erroneous and cannot stand. There is clear compliance with the description requirement.

### The § 103 Obviousness Rejection

■ In rejecting all claims under § 103 on Sanders in view of Macaulay, the examiner said in his Answer, in response to appellant's argument:

> The Examiner's conclusion of obviousness is not based on what the individual references themselves suggest, but [on] what logic and scientific reasoning taken with the combination of reference disclosures taken as a whole have suggested to one of ordinary skill in the art.

Whatever that unusual statement, quoted by the board without any suggestion of criticism, may be taken to mean, the board proceeded to make its own interpretations of Sanders and Macaulay. In discussing Sanders, the board begins with the state-

ment, "we appreciate that the patentee [Sanders] does not disclose the use of free-flowing capsule powders to prepare his coating." The board makes no effort to establish obviousness on the basis of Sanders alone and the Solicitor takes the same position, stating in footnote 8 of his brief, "The rejection has always been based upon a combination of Sanders and Macaulay under 35 U.S.C. § 103." The examiner's expressed view of Sanders is stated in his Answer as follows:

> The Examiner asserts that ... Sanders et al '846 teach a method for forming images which comprises exposing a layer of Photosensitive microcapsules on the surface of the substrate and that *it differs from the claimed invention in having precoated imaging sheets with microcapsules rather than photosensitive microcapsules coated on a support as a free-flowing powder.* [Emphasis ours.]

Both the examiner and the board having looked to Macaulay's disclosure as suggesting to those skilled in the art the use of the microcapsules in appellant's claimed process in the form of a free-flowing powder upon a support, not permanently attached thereto and finally removed, our principal task is to examine Macaulay, particularly the portions specifically relied on.

Macaulay is a fairly early patent in this relatively recent art. Application was filed in 1957 and the patent issued in 1962. Its title is "Recording Paper Coated with Microscopic Capsules of Coloring Material. Capsules and Method of Making." The recording paper product came to be known as "carbonless paper," referred to in the specification at bar. We judicially notice its widespread current use in manifold business forms in which the colorless coating on the back of a form causes writing to appear on an underlying sheet when the one above it is written on with a pencil or ball-point pen. The coating consists of microcapsules which are ruptured by the writing pressure to release a color-former. That is what Macaulay describes. First he describes how to make microcapsules and then he describes making his "recording paper" by coating paper with the microcapsules with the aid of a variety of binders.

We have carefully read every word of the Macaulay specification, paying particular attention to the passages relied on by the examiner, the board, and the Solicitor. Our conclusion is that nowhere does Macaulay suggest using microcapsules, which necessarily are in the form of a free-flowing dry powder to begin with, except by coating them on a sheet of paper or similar web material with the aid of a binder. We also conclude that the PTO's attempt to show the contrary consists of taking statements wholly out of context and giving them meanings they would not have had to one skilled in the art having no knowledge of appellant's invention, or to anyone else who can read the specification with understanding.

The first passage cited by the PTO is the second of five "objects" of the invention. (Col. 2, lines 62–67) It reads:

> It is another object of this invention to provide a substantially dry free-flowing powder of microscopic discrete capsules of marking fluid which may be applied to paper in a variety of ways and which *does not require an aqueous coating system* in preparing a pressure-sensitive copying material from the capsules. [Our emphasis.]

Both the examiner and the board attempt to use the emphasized words to support the patently absurd notion that Macaulay is suggesting the making of a recording paper having a transfer coating, which the patent states to be one purpose of the invention, by sprinkling dry powder on a piece of paper. What they overlook or purposely ignore is that the specification, before stating the above object, contains a long passage decrying the use of *aqueous* coatings on paper because of their many disadvantages. What the passage is saying is that various binder systems *other than aqueous* may be used with Macaulay's capsules and when he comes to describing them he names several, all of which are used to "affix" the microcapsules to the sheet of paper or whatever.

The next passage, relied on only by the board, is at col. 7, lines 60 et seq. where,

the board says, "Macaulay addresses the important advantages of the free-flowing capsule powders of his invention." It reads:

> Among the important advantages of the free-flowing capsule powders of the invention is the extreme flexibility and versatility in the manner in which they may be applied to web material, such as paper, to provide a pressure sensitive copying material having a coating of the rupturable capsules according to the invention which permits copying.

About this, the board said:

> Although Macaulay also discloses that the powders may be applied to a surface having a binder material, to adhere the capsules to the substrate, the overall disclosure of the reference is incompatible with appellant's suggestion that a binder coating is essential.

The argument falls of its own weight since every copying material disclosed in the reference has a binder; but it is also interesting to note that the passage the board relied on follows directly after this short paragraph:

> A coating of capsules and binder weighing 1 to 6 lbs., and preferably 2 lbs., per 500 sheets of 20″ × 30″ paper in which 50 to 95% of the weight of the coating consists of capsules has been found to be satisfactory.

The board's view of the "overall disclosure of the reference" is simply insupportable. Immediately after the sentence about versatility on which the board relied, the specification goes on for at least 30 lines to explain the great variety of *binders* which may be employed, explaining once again that *aqueous* binders can be avoided. Nowhere is the omission of a binder even hinted at as a possibility.

The Solicitor's brief says "Examples I, III, and VI of Macaulay show that one can achieve the desired imaging from microcapsules without having to bond them to a support layer." They show no such thing. They are simply examples of how to make the microcapsules and contain brief general statements at the end of each example on the color of the mark which is produced when the capsules are used as the patentee intends. They do not undertake to describe the application of the capsules to paper. Furthermore, this is a new argument by the Solicitor not presented to the board.

For the above reasons, we find the § 103 rejection to be in error.

### Conclusion

The decision of the board affirming the examiner's rejection of claims 1–20 of application serial No. 770,538 is *reversed*.

REVERSED.