**NOVO NORDISK A/S, Novo Nordisk of North America, Inc. and Novo Nordisk Pharmaceuticals Inc., Plaintiffs,**

**v.**

**BECTON DICKINSON AND COMPANY, Defendant.**

No. 96 Civ.9506(BSJ).

United States District Court, S.D. New York.

May 8, 2000.

**310**

John Paul Reiner, Robert B. Smith, White & Case, New York City, Edward V. Filardi, Skadden, Arps, Slate, Meagher & Flom, LLP, New York City, for Plaintiffs.

Douglas Sharrott, Fitzpatrick Cella Harper & Scinto, New York City, for Defendant.

1. Since Novo does not dispute Becton's claims as to the notice dates for the '535 patent—the date of the filing of Novo's Complaint, December 18, 1996; or the '323 patent—the date of the filing of Novo's Amended Complaint, February 13, 1997, the Court assumes that these dates are not in issue.

*OPINION* and *ORDER*

JONES, District Judge.

Defendant Becton Dickinson has moved for summary judgment on four issues arguing: (1) that the '535 patent, '323 patent, and the '906 patent are invalid as anticipated under 35 U.S.C. § 102(b) in view of a June 1991 issue of Novo Nordisk's informational brochure, *Medview,* containing an article by Lene Lytzen; (2) that all claims of the '323 patent and claims 11–14 of the '906 patent are invalid as anticipated under 35 U.S.C. § 102(b) in view of a May 1993 advertising brochure for Novo's NovoFine G30 pen needle product; (3) that Becton's G31 insulin pen syringe needle products do not infringe the '906 patent; and (4) that if Becton is found to have infringed on Novo's 906 patent, no damages have accrued due to Novo's failure to put Becton on notice of the infringement.[1]

I.

■ A patent is presumed to be valid, *see* 35 U.S.C. § 282, and this presumption only can be overcome by clear and convincing evidence to the contrary. *See, e.g., WMS Gaming, Inc. v. International Game Technology,* 184 F.3d 1339, 1355 (Fed.Cir. 1999). To be entitled to summary judgment, therefore, Becton has to establish that there are no material facts in dispute.

II.

A. Lytzen Article as Prior Art

■ Becton urges this Court to rule that Novo made a binding admission that the Lytzen article was a printed publication when it requested reexamination of the '535 patent. The Court rejects this conclusion as unfair to Novo and in any event, as without support.

Familiarity with facts in this case from this Court's prior opinions is assumed and the Court will only discuss those facts necessary to the disposition of the motion.

It is recognized that positions are often taken during patent prosecutions out of convenience and expedience, and therefore such positions should not be given conclusive effect. *See, e.g., Quad Environmental Technologies Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 873 (Fed.Cir.1991) (refusing to treat the filing of a terminal disclaimer over a double patenting as an admission that the double patenting reference was invalidating).

Becton concedes that Novo submitted Lytzen to the Patent Office during the reexamination with the express proviso that "[t]he Patent Owner admits, *for purposes of this reexamination proceeding only,* that Lytzen is prior art under 35 U.S.C. § 102(b)." (emphasis added) The Patent Office conducted the reexamination on Novo's conditional representation that it was a publication for purposes of the reexamination proceeding and concluded that Lytzen was "not material to the patentability of the ['535 patent]" and created "no substantial new question of patentability."

Under the circumstances, Becton's various arguments regarding the reexamination proceeding are meritless. First, under the Manual of Patent Examining Procedure ("MPEP"), if the Patent Office had found Novo's conditional admission concerning the Lytzen article to be improper, it would have been obligated to inform Novo and return the citation papers and refuse to conduct the reexamination.

Second, since the Patent Office did not find the procedure improper, Becton's contention that conducting a reexamination proceeding based on a conditional admission constitutes an impermissible "advisory" opinion by the Patent Office and/or an impermissible expenditure of government funds is without merit.

Third, Becton's argument that citation of the Lytzen article during the prosecution of the '323 and '906 patents constitutes an admission that Lytzen is a prior art publication is incorrect. In *Standard Manufacturing Company v. United States*, 25 Cl. Ct. 1, 61 (1991), the United States Claims Court rejected such an argument holding:

> The Patent & Trademark Office clearly recognize[s] that an applicant may choose to furnish material information in an Information Disclosure Statement which does not necessarily depict prior art. The Court, therefore, finds that Standard's disclosure of the document in question in the required disclosure statement should not be considered an acknowledgment, declaration, concession or any kind of recognition of the fact that the disclosed publication is prior art.

*Id.* at 61–62. Moreover, 37 C.F.R. § 1.97(h) provides that "[t]he filing of an information disclosure statement shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability . . . ."

Fourth, Becton argues that Novo should have attempted to "correct" the cover pages of the patents-in-suit to remove the reference to the Lytzen article. However, the Patent Examiner is required to list on the face of the patent or reexamination certificate all references considered during prosecution, regardless of whether those references are technically prior art. *See* MPEP § 130.12. Further, citation of a reference in an information disclosure statement—which requires the Patent Office to list the reference on the front cover of the patent—does not constitute an admission that the reference is prior art. Thus, the Lytzen article is properly cited on the cover pages of the patents-in-suits.

Accordingly, the Court declines to rule that the Lytzen article is prior art based upon Novo's conditional admission.

**B. Lytzen and the Elements of the Patents–in–Suit**

■ To anticipate a claim, a reference must: (1) disclose every element of the challenged claim; and (2) enable one

skilled in the art to make the claimed subject matter. *See PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1566 (Fed.Cir.1996). It is not sufficient that each element be found somewhere in the reference, the elements must be "arranged as in the claim." *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1458 (Fed.Cir. 1984). Further, the reference must be sufficiently clear so as to prove the existence of each and every element in the reference. *See Motorola, Inc. v. Interdigital Technology Corp.,* 121 F.3d 1461, 1473 (Fed.Cir.1997).

1. '535 Patent Claim

 a. Claim 1

The elements of claim of the '535 patent are as follows:

(1) An insulin injection system compromising;

(2) a pen shape syringe system comprising;

(3) a cartridge with insulin; and

(4) an injection needle;

(5) wherein the injection needle is a G30 needle; and

(6) the cartridge contains an insulin type which may freely flow through the G30 needle.

█ Becton's argument for the proposition that the Lytzen article discloses the elements of claim 1 of the '535 patent is based on the deposition testimony of one of its experts:

It [Lytzen] describes the 30–gage needle, describes the needle, I guess the needle hub itself that's shown on the— actually shown on the cover, even though it only—it's only for a 27–gauge needle, but the concept is there and then the 30–gauge needle is described in the text portion.

Sharrott Decl.Exh. 37, Synderman Tr. 44:14–20. With respect to the insulin disclosed in Lytzen, Becton's expert also stated: "As far as the insulin that would flow freely through a 30–gauge needle, the only insulin that was available in cartridges is insulin that would flow through a 30–gauge needle." *Id.* at 45:9–13.

To rebut this, Novo's expert, *see* Fischell Declaration, opines that "[n]owhere in the Lytzen article does it disclose or teach that one should use a G30 needle with a pen syringe with a cartridge." 1999 Fischell Decl. ¶ 6. Moreover, "[n]o specific insulin is described in the Lytzen article that can be used with a pen shaped syringe and a cartridge and a G30 needle." *Id.* Finally, as Dr. Fischell stated, one cannot conclude, at this juncture, that "a person of skill in the art of medical devices could . . . utilize the Lytzen article to construct the system described in the '535 and '323 patents." *Id.* at ¶ 23.

In light of these contrary opinions, there are, at a minimum, genuine issues of material fact as to whether: (1) Lytzen teaches each and every element of claim 1 of the '535 patent; (2) Lytzen discloses the elements of claim 1 as arranged and disclosed in the '535 patent; and (3) Lytzen is enabling.

 b. Dependent Claims 2–10 of the '535 Patent

Each of the dependent claims of the '535 patent contain all the elements of the independent claim 1 and the particular additional elements recited in each particular dependent claim. *See* 35 U.S.C. § 114, ¶ 4. Because there are genuine issues of material fact as to whether Lytzen discloses each element of claim 1 of the '535 patent, genuine issues of material fact exist as to each of claim 1's dependent claims. *See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1256 n. 4 (Fed. Cir.1989). Moreover, Becton's moving papers fail to demonstrate an absence of genuine issues of material fact with respect to claims 2–10 of the '535 patent.

2. '323 Patent Claim

 a. Claim 1

The elements of claim 1 of the '323 patent are as follows:

(1) A needle assembly comprising;

(2) a needle hub having a base and a standard insulin needle fitting for removably mounting said needle assembly on a

(3) pen-type insulin syringe having a standard mounting and which accepts;

(4) cartridges containing only insulin types that may flow freely through a G30 needle; and

(5) a G30 needle secured in said base ad having first and second needle portions extending from said base in opposite directions.

Becton's expert argues that the '323 patent is also invalid over the prior art. However, with respect to the element of a "standard insulin needle fitting," the existence of such a standard fitting, at any given time, remains a fact issue for trial.

Further, with regard to the requirement of claim 1 of the '323 patent of "a G30 needle secured in said base and having first and second needle portions extending from said base in opposite directions," Synderman opined that Lytzen inherently disclosed the first and second needle portions relying on a photograph of a G27 PenNeedle in Lytzen. In contrast, since no G30 pen needle is depicted in Lytzen, Dr. Fischell concluded that the depiction of the G27 pen needle is insufficient as a disclosure of a G30 pen needle with the first and second needle portions in Lytzen. Considering the declaration of Fischell and the deposition testimony of Synderman, there are genuine issues of material fact as to whether the Lytzen article discloses each and every element of claim 1 of the '323 patent.

### b. Claims 2–4 of the '323 Patent

Claims 2–4 of the '323 patent are dependent on claim 1 and thus, contain all the limitations of claim 1 in addition to the further specific elements retained in each

dependent claim. Because there are genuine issues of material fact with respect to whether Lytzen teaches each element of claim 1, there are genuine issues of material fact with respect to claims 2–4 of the '323 patent.[2]

### 3. '906 Patent Claim

Becton has not specifically addressed the '906 patent with respect to Lytzen. With respect to claims 1–10 of the '906 patent, genuine issues of material fact preclude summary judgment for the same reasons as set forth for claims 1–10 of the '535 patent above. With respect to claims 11–14 of the '906 patent, genuine issues of material fact preclude summary judgment for the same reasons as set forth for claims 1–4 of the '323 patent.

### III.

### A. G30 Needle Brochure

Becton argues that Claims 1–4 of the '323 Patent are anticipated by the 1993 G30 Needle Brochure and that the 1993 Brochure is a prior art printed publication.

### 1. Written Description Requirement of 35 U.S.C. § 112

Becton's initial argument centers on the question of whether the "written description" of the invention in Novo's original PCT application filed in October 1992 is adequate to support the "needle assembly" claims in the '323 and '906 patents. If it is, the 1993 Brochure cannot be prior art.

 Application of the written description requirement of 35 U.S.C. § 112 is a question of fact. *See Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed.Cir. 1991). "[T]he test for sufficiency of support in a patent application is whether the disclosure of the application relied upon reasonably coveys to the artisan that the inventor had possession at that time of the

---

**2.** In addition, Dr. Fischell has opined that Lytzen does to disclose, expressly or inherent-

ly, every element of any of claims 2–4.

later claimed subject matter." *Ralston Purina Co. v. Far–Mar–Co., Inc.,* 772 F.2d 1570, 1575 (Fed.Cir.1985) (internal quotation marks and citation omitted). Thus, § 112 does not require the express recitation in the parent application of every feature of the claims in a later continuation-in-part application, but rather calls for a determination on a case-by-case basis of whether a person of ordinary skill in the art would consider the later claimed subject matter to be part of the invention as originally disclosed. *See id.* In reaching that determination, material which is inherently part of the disclosure, even though not expressly disclosed, must be considered. *See Kennecott Corp. v. Kyocera Intern., Inc.,* 835 F.2d 1419, 1422 (Fed. Cir.1987).

Patents are presumed valid, and the party challenging a patent bears the burden of proving invalidity by clear and convincing evidence. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1553 (Fed.Cir.1983). "In addition, the party asserting invalidity also bears the initial procedural burden of going forward to establish a legally sufficient *prima facie* case of invalidity." *Ralston Purina,* 772 F.2d at 1573. "A party asserting invalidity based on 35 U.S.C. § 112 bears no less a burden and no fewer responsibilities than any other patent challenger." *Id.*

■ Here, Becton asserts that the elements of the '323 patent claims and '906 patent claims 11–14 are not supported in the parent application, therefore rendering the 1993 Brochure prior art to the '323 and '906 patents. Because genuine issues of fact exist, Becton is not entitled to summary judgment on the issue.

2. Requirement to Produce Drawings

Becton's first argument is that plaintiffs' submission of drawings in response to the Examiner's drawing requirement is conclusive on the issue of whether the drawings added disclosure that was not present in the original application for § 112 purposes. *See* Becton Br. at 4–5. This is wrong.

As Novo notes, the application was not rejected for failure to meet the requirements of § 112 because of the lack of drawings, nor did the Examiner state that drawings were necessary for the understanding of the subject matter. *See* Sharrott Exh. 27.

The Examiner stated that the invention "admits of illustration," which is a proper ground for requiring drawings even when such drawings are not necessary for the understanding of the subject matter. *See* 37 C.F.R. § 181(c). In addition, the MPEP provides that when drawings are deemed necessary for understanding the invention, the applicant must be informed that the application is incomplete, and no filing date will be granted. *See* MPEP ¶ 608.02 ("Drawing Requirements"). Here, the application was not deemed incomplete, and a filing date of July 2, 1992 was granted. The absence of drawings from the application as originally filed does not, *ipso facto,* require a finding that the subject matter depicted in the drawings was not disclosed in the original application. Accordingly, issues of fact remain as to whether the application supports the later claims.

3. The Parent Application and Later Claims

A reasonable trier of fact examining the 2000 Fischell Declaration, could find that all the features in the claims, though not disclosed *verbatim,* were sufficiently supported in the original PCT application to convey to one skilled in the art that the inventors were in possession of the subject matter later claimed in the '323 and '906 patents. *See* 2000 Fischell Decl. 4; *see In re Wright,* 866 F.2d 422, 425 (Fed.Cir. 1989) ("The fact, therefore, that the exact words here in question . . . are not in the specification is not important.")

a. "First and second needle portions"

Claim 1 of the '323 patent and claim 11 of the '906 patent recite that the G30 nee-

dle is secured in a hub having a base, having "first and second needle portions extending from said base in opposite directions." 2000 Fischell Decl.Exhs. A at col. 4, l. 33–35 & Exh. B. at col. 4, l. 46–47. This language was absent from the original PCT application. However, Novo argues, that given the original disclosure's reference to the "injection portion of the needle," a reasonable trier of fact could conclude that the inventors contemplated more than one needle portion and this would have been understood by one skilled in the art. It bases its argument on the discussion of the embodiment which states that the "needles may be manufactured in the same length as usual for thicker needles," but the "injection part of the needle" is limited to 8–12 mm. 2000 Fischell Decl. Exh. C at 3:11–15. As a result, there is an issue of fact as to whether the "second needle portion," is expressly supported by the "injection portion of the needle" discussed in the original PCT application. *See* 2000 Fischell Decl. ¶ 7.

Novo also argues that the "first needle portion" of the '323 and '906 patent claims, *i.e.*, the portion of the needle extending from the hub opposite the second, injection portion of the needle, is inherently disclosed in the original PCT application. It contends that the invention described in the original PCT application calls for the injection of insulin from an insulin needle cartridge, through a needle, and into a patient. *See* 2000 Fischell Decl.Exh. C. In Novo's view, for the needle assembly to perform that function, there must be one needle portion to piece the septum of the insulin cartridge, thereby gaining access to the insulin in the cartridge, and another needle portion to pierce the patient's skin and allow for the subcutaneous injection of the insulin. *See* 2000 Fischell Decl. ¶¶ 8–9.

Although the first needle portion for piercing the cartridge septum is not explicitly defined in the original PCT application, as Novo argues a reasonable juror could find that, one of ordinary skill would have recognized that such a needle portion

was a necessary part of the structure in the original PCT application. *See* 2000 Fischell Decl. ¶ 9; *see Continental Can Co. USA, Inc. v. Monsanto, Co.*, 948 F.2d 1264, 1268 (Fed.Cir.1991). At this stage, Becton's argument, which looks only to the explicit language in the applications, must fail. *See Therma–Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988, 993 (Fed.Cir. 1995) ("the later explicit description of an inherent property does not deprive the product of the benefit of the earlier application.").

b. "Standard insulin needle fitting" and "standard mounting"

Claim 1 of the '323 patent and claim 11 of the '906 patent further require a "needle hub having a base and a standard insulin needle fitting for removably mounting said needle assembly on a pen-type insulin syringe having a standard mounting." 2000 Fischell Decl.Exh. A at col. 4, l. 27–30 & Exh. B at col. 4, l. 39–42. Becton argues that the language finds no support in any application prior to the October 14, 1994 Continuation–In–Part ("CIP") application. However, this Court finds that there is an issue of fact as to whether this conclusion is warranted under the written description requirement of § 112.

The original PCT application states that "[t]he needle may have attaching means . . . [which] may be a needle hub having a thread cooperating with a corresponding thread on the syringe." 2000 Fischell Decl.Exh. C at 3:1–5. Novo's foundation for its argument that the "attaching means" described in PCT application support the later claimed "standard insulin needle fitting" is the corresponding language of claim 2 of the '323 patent (and claim 12 of the '906 patent), which recites that the "standard fitting" may be a sleeve with a threaded interior. *See* 2000 Fischell Decl. ¶ 13.

Likewise, Novo contends that the "corresponding thread on the syringe" described in the PCT application supports the later claimed "standard mounting," an

embodiment of which is recited in claim 2 of the '323 patent as "a standard, externally threaded, hub-receiving part of a pen-type insulin syringe." 2000 Fischell Decl. ¶ 13, Exh. A at col. 4, l. 41–42. Moreover, Novo argues that one of ordinary skill in the art would understand that the inventors had possession of the "standard insulin needle fitting" and "standard mounting" features of the invention as early as the 1992 PCT application given the common industry knowledge that Novo and Becton supplied the overwhelming majority of pen insulin needles as of 1992, and that both companies' needle assemblies used the cooperating thread arrangement disclosed in the PCT application. See 2000 Fischell Decl. ¶ 12. At a minimum, genuine issues of material fact exist as to whether the terms "standard insulin needle fitting" and "standard mounting" find adequate support in the original PCT to satisfy the requirements of 35 U.S.C. § 112.

c. "Interior threaded annular sleeve"

Claim 2 of the '323 patent and claim 12 of the '906 patent recite a "needle assembly according to" the independent claim,

wherein said standard fitting includes an annular sleeve extending from said base such that said sleeve surrounds said first needle portion concentrically and is spaced therefrom, and wherein said sleeve has a threaded interior by which it may be screwed onto a standard, externally threaded, hub receiving part of a pen-type insulin syringe.

2000 Fischell Decl.Exh. A at col. 4, l. 36–42 & Exh. B at col. 4, l. 48–54. Novo argues that, contrary to Becton's assertion, this claim language finds support in the original PCT application, where the applicant explained that "attaching means may be a needle hub having a thread cooperating with a corresponding thread on the syringe." 2000 Fischell Decl. ¶ 15. It contends that this disclosure is more encompassing than the later claimed embodiment, and is sufficient to inform persons of ordinary skill in the art that the inventors were in possession of a needle assembly having an "interior threaded annular sleeve" at least as early as the original 1992 PCT application. See 2000 Fischell Decl. ¶ 16.

d. "Predetermined length"

Claim 3 of the '323 patent and claim 13 of the '906 patent require that the "second needle portion has a predetermined length appropriate for injecting insulin into a human patient." 2000 Fischell Decl.Exh. A at col. 4, l. 44–45 & Exh. B at col. 4, l. 55–56. Becton contends that this limitation was not disclosed until the October 14, 1994 CIP application, and therefore claims reciting this limitation are not entitled to the filing date of the original PCT application for priority. See Becton Br. at 3.

Novo argues that although the term "predetermined length" is absent from the original PCT application, the basis for that term does appear in the original disclosure. Specifically, it contends that the original disclosure states that "the needle must have a length permitting the subcutaneous injection of the insulin," which is consistent with the meaning of "predetermined length" as it is understood by persons of ordinary skill in the art. See 2000 Fischell Decl. ¶¶ 18–19. As a result, as Novo argues, a genuine issue of fact remains in dispute as to whether the original PCT application would have conveyed to persons of ordinary skill in the art that the inventors were in possession of the "predetermined length" limitation, even though that term was not added until later. See Therma–Tru, 44 F.3d at 992–93.

e. "Embeds"

Claim 4 of the '323 patent and claim 14 of the '906 patent read as follows:

A needle assembly according to claim 3[13], wherein said base further comprises a central protrusion which extends from said base for a predetermined distance along said second needle portion and embeds said second needle

portion along the said distance, and wherein said second needle portion further comprises an exposed end which projects axially from said central protrusion and which has a length corresponding to the desired depth of needle insertion into a human patient.

2000 Fischell Decl.Exh. A at col. 4, l. 46–54 & Exh. B at col. 4, l. 57–65.

Becton contends that the term "embeds" finds no support in the original PCT application, and therefore is not entitled to claim priority from that application. *See* Becton Br. at 3. However, Novo argues that the structure recited in the above claim was described in the original PCT application:

> The needle hub may have a central protrusion covering part of the length of the needle. Thereby, the length of the injection part of the needle is made shorter.... The needles may be manufactured in the same length as usual for thicker needles and the shorter injection part may be obtained by the hub protrusion covering a larger part than usual for the needle.

2000 Fischell Decl.Exh. C at 3:6–15. Novo contends that although the term "embeds" was not used in the PCT application, persons of ordinary skill in the art would have appreciated that the idea of the central protrusion "embedding" the second needle portion is the same as the protrusion "covering" the needle portion. *See* 2000 Fischell Decl. ¶¶ 21–22. As Novo argues, a genuine issue of fact remains in dispute as to whether the claim limitation "embeds" is supported in the original PCT application for purposes of § 112.

4. Prior Art

As discussed above, there are issues of disputed fact as to whether the challenged limitations of the '323 and '906 patent claims find support in the original PCT application filed July 2, 1992. Since Becton contends that the 1993 Brochure was published in May 1993, the brochure cannot be prior art to claims having an effective filing date prior date to May 1993. *See* 35 U.S.C. §§ 102(b) & 120. Because Becton has failed to prove the absence of disputed issues of fact underlying the determination of whether the 1993 Brochure is prior art, Becton's motion for summary judgment may be denied without further considering the issue of whether the 1993 Brochure is an anticipating reference.

## IV.

Becton's argument in support of summary judgment for noninfringement of the '906 patent by its 31 gauge needle products appears to be twofold. First, Becton argues that because this Court construed the scope of the term "thinner than G29" to mean thinner than G29 but not thinner than G30, infringement of the '906 patent under the doctrine of equivalents by G31 needles is precluded as a matter of law. *See* Becton Br. at 9. On this point, Novo argues that such an argument is meritless given Federal Circuit precedent. Second, if thinner than 29 gauge claims are patentable over prior art 29 gauge pen needles, according to Becton, there must be a substantial difference between pen needles that are thinner than 29 gauge and 31 gauge. *See* Becton Br. at 8–9. Novo counters by arguing that this argument raises several factual issues: (1) whether there is a substantial difference between prior art 29 gauge and thinner than 29 gauge pen needle assemblies; and (2) even if there is such a difference, whether it necessarily follows that thinner than 29 gauge pen needles and 31 gauge pen needles are substantially different.

A. Doctrine of Equivalents

■ Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17,

117 S.Ct. 1040, 1045 n. 8, 137 L.Ed.2d 146 (1997). Infringement may be found under the doctrine of equivalents if every limitation of the asserted claim, or its equivalents, is found in the accused subject matter, where an equivalent differs from the claimed limitation only insubstantially. Whether a component in the accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination. *See id.* at 1054.

Becton relies on *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.,* 16 F.3d 394 (Fed.Cir. 1994) to argue that as a matter of law—because this Court construed the claim element thinner than 29 gauge to mean thinner than 29 gauge but not thinner than 30 gauge—there can be no infringement of the '906 patent by Becton's 31 gauge needle under the doctrine of equivalents. *See* Becton Br. at 9. However, The Federal Circuit in *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1317 (Fed.Cir.1998), characterized *Dolly* as being a case where "given the marked difference between the allegedly infringing device and the claim limitation, no reasonable fact finder could have found equivalence." *Id.* at 1318. The Federal Circuit stated that:

> *Dolly* [and other cases citing and quoting *Dolly*] were decided on their facts.... They simply explained that on the facts presented, no reasonable finder of fact could have found infringement by equivalents because the differences between the allegedly infringing devices and the claimed inventions were plainly not insubstantial. But they did not read the doctrine of equivalents out of existence when a claim limitation is not expressly met be an accused device.

*Id.* (internal quotation marks and citations omitted). As a result, summary judgment must be denied unless no reasonable finder of fact could find infringement by equivalents because the differences between the infringing devices and the claimed invention are plainly not insubstantial.

### B. Noninfringement under the Doctrine of Equivalents

■ The relevant inquiry under the doctrine of equivalents regarding Becton's 31 gauge pen needle assembly is whether or not the differences between those needle assemblies and the claimed thinner than 29 gauge needle assemblies are insubstantial.

Novo provides evidence of insubstantial differences in the Second Supplemental Report of Robert E. Fischell. Fischell opines that the relevant differences between thinner than 29 gauge and 31 gauge pen needle assemblies are insubstantial because a 31 gauge pen needle assembly, in combination with the other elements of the claims of the '906 patent achieves the same function in the same way and with the same result as a thinner than 29 gauge needle assembly in combination with these elements. *See* Zisk Decl.Exh. A, ¶¶ 3–17.

Becton does not provide the necessary factual and legal support for its argument that because the invention in the '906 patent distinguishes over the prior art 29 gauge needle, the difference between a 30 and 31 gauge needle must not be insubstantial. *See* Becton Br. at 8–9. Becton argues that Novo's alleged view of patentability of 30 gauge needle assemblies over 29 gauge pen needle assemblies precludes there being insubstantial differences between thinner than 29 gauge pen needle assemblies and 31 gauge pen needle assemblies.

In response, Novo argues that it does not necessarily follow from a patentable distinction between 29 gauge and thinner then 29 gauge needle assemblies that the difference between thinner than 29 gauge and 31 gauge needles is substantial. Because there are genuine issues of fact in dispute, summary judgment is inappropriate.

## V.

Becton argues that "Novo has never notified [it] that its 31 gauge pen needles infringe the '906 patent." Becton Br. at 14. Becton argues that as a matter of law, damages have not yet begun to accrue from its infringement of the '906 patent. *See id.* at 14–15.

In response, Novo argues that: (1) Becton was put on notice that its pen needles allegedly infringe the '906 patent; (2) Becton is ignoring the specific statutory language of 35 U.S.C. § 287(a) that the "[f]iling of an action for infringement shall constitute such notice"; (3) the cases on which Becton relies do not support Becton's argument; and (4) Becton ignores the fact that Novo filed suit against Becton for infringement of the '906 patent by Becton's pen needles and pen-type syringes on the day the '906 patent issued, November 16, 1999. *See* Compl., 99 Civ. 11367(BSJ).

Novo contends that Becton was given the notice required under § 287(a) that its 30 gauge and 31 gauge pen needles and insulin pens infringe the '906 patent on November 16, 1999. On that day, a complaint was served on Becton and filed with this Court in which Novo charged that "[Becton] has made and sold, and continues to make and sell, within the United States insulin pen needles, which activities infringe upon the '906 patent," and as well, Novo charged Becton "with the sale, promotion, and marketing of its insulin pen needles and pen shaped syringes, has and will continue to actively induce consumers to infringe upon the '906 patent." *See* Zisk. Decl.Exh. B. ¶¶ 9–14. The Complaint specifically accuses Becton of infringing the '906 patent by its manufacture and sales of its pen needles and insulin pens. According to Novo, no other notice is required under § 287, as this is a "filing of an action for infringement" that the statute mandates "shall be such notice." § 287(a).

Novo contends that while Becton may "submit that when notice is given by the filing of a complaint, the accused products should be specifically identified," Becton Br. at 12, in Novo's view, Becton cites no actual authority for its "submission" and the cases on which Becton relies do not support this proposition.

Becton cites *General Elec. Co. v. Grand Gaslight,* 46 F.Supp. 822 (S.D.N.Y.1942). *General Elec.,* however, was a case that pre-dated 35 U.S.C. § 287(a) and in particular, predated the mandate in the statute that the filing of a suit constitutes notice under the section. The case reveals that the court was concerned primarily with the question: "Is the service of the complaint sufficient notice to the defendant of the infringement?" *Id.* at 824. This question did not address the issue of how much specificity is required for notice regarding the accused products.

Contrary to Becton's allegations in its Memorandum of Law, this District takes a liberal view of the notice requirement under § 287. For example, in a case involving license negotiations over patented photographic developer formulations, the Court found the following language in a letter from the patent holder to the accused infringer to be adequate notice of infringement in the context of the overall dealings between the parties:

> We are informing the trade that the purchase of the patented developer from Kodak gives the purchaser the necessary license to use or resell the purchased material. As a supplier of this type of developer, we wanted you to know of this since you may be receiving inquiries from your customers soon.

*Eastman Kodak Co. v. GAF Corp.,* 195 U.S.P.Q. 644 (S.D.N.Y.1977). Thus, an accusation of infringement by a class of product ("type of developer") is sufficient actual notice under § 287(a) under at least some circumstances.

Moreover, the Court has specifically denied a defendant's motions that were based on the same "submission" as put forward by Becton in the present case. In a series of decisions, Judge Baer denied

three times a defendant's various motions that argued that notice under § 287(a) requires as a matter of law that the specific products be identified. *See AccuScan, Inc. v. Xerox Corp.*, 1998 WL 60991 at 5 (S.D.N.Y. 1998); *AccuScan, Inc. v. Xerox Corp.*, 1998 WL 603217 at 10 (S.D.N.Y. 1998); *AccuScan, Inc. v. Xerox Corp.*, 2000 WL 280005 at 1 (S.D.N.Y.2000).

In *AccuScan*, the plaintiff had sent a letter to Xerox accusing Xerox's facsimile machines of infringing AccuSan's patent and later sued Xerox for infringement not only by facsimile machines, but also by scanners, copiers, and document publishing systems. *See AccuScan*, 1998 WL 603217 at 9 (S.D,N.Y.2000). Following a denial of summary judgment on the issue of notice of specific products, and a first trial in which the jury found for Accuscan, the Court revisited the issue of compliance with actual notice under § 287(a) as part of a larger reconsideration of the case. Judge Baer stated that

> there is no authority to support [the defendant's] proposition that the actual notice requirement cannot be satisfied as a matter of law unless the specific accused device is mentioned in the notice, even where other similar devices are referred to in the notice. Instead, the Federal Circuit has emphasized that there is some flexibility involved in determining whether the actual notice requirement has been met.

*Id.* at 10. The *AccuScan* court concluded that "it is well established that whether § 287 is complied with is an issue of fact for the jury." *Id.* at 10 (citations omitted). Following a second trial in which the jury found that Accuscan had provided actual notice under § 287, Xerox moved for Judgement as a Matter Of Law ("JMOL"), and Judge Baer denied JMOL on the notice issue. *See AccuScan*, 2000 WL 280005 at 2000 U.S. Dist. LEXIS 2822, at \*3–\*4.

Thus, the notice requirement under § 287 is treated flexibly—as a question of fact for the jury. Even where the notice given went to a merely related product class, such notice may be sufficient and the question of adequate notice must go to the jury. Here, a reasonable trier of fact could find that the notice given to Becton was to the specific products, or at the very least, to the narrow family of products for which Novo now seeks damages. As a result, summary judgment on the issue of notice is inappropriate.

## VI.

For all of the reasons stated above, Becton's motions for summary judgment are *denied.* The parties are reminded that: (1) the Joint Pretrial Order shall be filed on or before May 11, 2000; (2) the final pre-trial conference in this matter will be held on May 12, 2000 at 10 a.m.; and (3) the trial of this matter will begin on May 15, 2000 at 9 a.m.

**SO ORDERED.**